and we will move on to our next case United States v. Marshall, No. 25-5155, please proceed. Good morning, may it please the court. Brandon Lauer on behalf of Edric Marshall, the appellant and defendant in this matter. The district court erred in denying our motion to suppress the evidence in this matter. And we ask this court to reverse that and remand it back to the district court. For on a de novo review, the facts and circumstances taken separately and in their totality cannot support the legal conclusion. That officer Vernon had reasonable and articulable suspicion that Mr. Marshall was presently armed and dangerous. Well, aren't we on clear error review for the factual findings specifically that you're challenging that underlie the reasonable suspicion determination? You know, there are two issues that we did argue that were were clear error by the district court. Would you like me to expound on those? Yes, please. So we did argue that the first issue that we believe was clear error. Was the district court's finding that officer Vernon had both the training and experience to detect the odor of heroin through. In the way he described through one's sweat through one's pores, whereas the transcript and the testimony is definitively clear. It is quite the opposite. Officer Vernon only had kind of some experience dealing with folks who have used heroin. They described it as about 10 traffic stops where he had some experience. So the district court describing it as both training and experience, we believe is a clear error lacking any factual support in the record. The second issue that we believed was a clear error. Was. My apologies, your honor, I'm blanking on what the second issue was that we argued was a clear error. About Miss Miss Wilson's request to remove Mr. Marshall from from the car before conducting the search. My apologies, your honor. Yes. So we had argued that when you look at officer Vernon's testimony in the transcript, what he had testified to was that her request that Mr. Marshall removed from the car due to his general law enforcement experience that he always pulls people out of the car. Gave him the belief that she believed that he may have caught something on him. The district courts read more into that than officer Vernon conceded or testified to officer Vernon simply said something. The district court said, well, officer Vernon believed that he must have had a weapon under the circumstances. Why would that be an unreasonable or impermissible inference on the record? Because officer Vernon did not make that inference. He did not state that he believed he had a weapon based off that. He merely stated that he believed that he may have something. As for the factors used to make the legal determination that reasonable suspicion occurred, I want to start with odor. Officer Vernon testified that what he had smelled was a chemically vinegar smell associated with heroin. It's volume three, page nine. Quote like their body secretes changes their pH balance or something. It's volume three, page 17. In other words, what officer Vernon described was as if he was smelling. A smell like one was sweating it from their pores. And now taking it face value. What does this show? It shows that at some point in the past, unknown, Mr. Marshall, maybe used opiates, but what it does not show and what does not support is that he was presently armed and dangerous. How does one get from past usage of an opiate to being presently armed and dangerous? If I may analogize, it is as if co-worker were to have a dinner heavily seasoned with garlic or perhaps ate quite a number of pickles for dinner. Shows up to work the next day, perhaps without brushing their teeth. And you can smell that heavy odor of garlic on their breath or a vinegar from the pickles. But yet one couldn't make the, one wouldn't accuse their co-worker of having a clove of garlic or a pickle hanging around in their suit pocket. And so in the same way, this odor coming from sweat, as reasonable as that may or may not be, considering that officer Vernon conceded he had no formal experience. Regardless, the value of this is limited. The notion that one. Even if we agree with you on that fact, don't we have to assess all of the facts in the totality? Aren't we required to do that under under applicable law? Yes, Your Honor. We do first individually analyze the probative value of each separately and then collectively and in the context of the totality of the circumstances. So how do you prevail on the totality? Of the circumstances. Your Honor, that's our position that each of the factors used that being the driver's nervousness, the odor, the generalized criminal history and the generalized gang associations separately are weak enough that as in United States v. Wood. In United States v. Wood, the court noted that reliance on the quote mantra of totality of the circumstances cannot quote metamorphose those facts into reasonable and articulable suspicion. So the facts here, even though there are a number of factors, they are weak individually and they're weak enough individually that even when you look at the totality, you cannot force those. You cannot shove them into the box of totality and find reasonable suspicion. Drug use has been recognized by this court at Garcia 2014. Garcia drug use has been viewed as a minor factor in reasonable suspicion analysis, whereas versus there's a much stronger nexus where there's evidence of drug trafficking. But we have no evidence of drug trafficking here. All we have is evidence of some prior drug usage. Criminal history. What do we know or what did Officer Vernon knew know about Mr. Marshall's criminal history? We don't know. All he knew that he was, all he testified to was that he had known that he was a felon. In cases where criminal history has mattered or where it has been important, it is often because that criminal history has involved weapons. It has involved violence. It has involved drug trafficking. So was the criminal history here violent? Did it involve drug trafficking? Did it involve weapons? Well, we don't know. And general criminal history, even felony history, does not make one a roving target for search and seizure. And so any probative value from Officer Vernon's mere understanding of Mr. Marshall as a felon is attenuated by that lack of detail. Gang association. Similarly to the criminal history, we lack a lot of detail. And in cases where gang association matters, there's often more. How was the association determined? Are we talking an active membership? Are we talking family members? Are we talking his best friends? When was this association? For how long? How involved was he? We don't know. All we know is that Officer Vernon knew he had a quote, association with the United Aryan Brotherhood. How should we be thinking about the district court's focus on concerns about officer safety when we're assessing the totality? Yes, Your Honor. Officer safety can be seen as more of the societal justification for why we permit these warrantless searches on something less than probable cause. It's kind of the why we allow for risks to occur, but it's not the constitutional rule and standard. The standard is still and ultimately will be Terry and Arizona v. Johnson, armed and dangerous. As the court kind of re-clarified in United States v. Fager, reaffirming that cases that get close to officer safety as its own justification, such as McCray and Manjaras, are not exceptions to the armed and dangerous requirement. But those cases merely were specific facts and functioned as specific applications of how the armed and dangerous requirement played out. And as they noted in footnote four of Fager, an officer's ability to search a car does not automatically mean he has the authority to frisk the driver. Or alternatively, I would argue the passenger, as in the underpinning of a frisk is always and always will be reasonable and articulable suspicion that one is armed and dangerous. The justification for why is the need for officer safety. So before you move on, then, could you just tell me how you think we should consider the fact that the passenger asked that the defendant be removed? How do we weigh that? What do we do with that? Are you giving it no weight, I guess, is what I'm asking. Your Honor, so on the body cam, so on the exhibit at the district court level, starts at roughly about the five minute, 20 second mark. Officer Vernon asks, hey, can I search your vehicle? And she says, yes, quote, if you'll get him out. Now, it's hard to really know perhaps what her intent may have been there. A lot of this requires a lot of speculation reading into that request. But the logical conclusion that, or the, I guess, the legal conclusion that that somehow is sufficient to show that the driver is somehow, I guess, hinting that he might have a weapon is pure speculation. It's hunch. And I guess I understand that you think that inference is incorrect. But what would you do with it? Nothing. I mean, would anything that we would draw from that be speculation, I guess, to say it differently? Yes, Your Honor. I would argue that there's really not a whole lot to do with it. But I would argue that it certainly is insufficient, even in the totality. Of the circumstances to find that officer Vernon had a reasonable suspicion that there was a weapon on Mr. Marshall and that he was presently dangerous. And so I would, I would ask that the court does not read a whole lot into that request. And so. Because officer Vernon did not have a reasonable and articulable suspicion that Mr. Marshall was presently armed and dangerous, the district court erred. And we would ask that the court on its de novo review, reverse and remand back to the district court. Thank you. I would ask to reserve the rest of my time unless there's any questions. You may. Thank you. May it please the court. Mike Flesher on behalf of the United States. Your Honor, I want to start by addressing your last point of how Miss Wilson's comment. I guess how officer Vernon interpreted that comment, which it's very clear on the record. Officer Vernon states that it stood out to him that. And especially the context of that statement in the record transcript that not only was he talking about officer safety at that point, but he says that because of that statement. It made him believe that she knew he had something on him. Obviously, that the district court interpreted that statement as a weapon. But. The it also, importantly, connects Miss Wilson's conduct to Marshall. I know in the defense's reply brief, they bring up the recent United States of Williams case, which obviously was involving a protective sweep, not a pap frisk as here. The court held that obviously the relationship in and among itself is not reasonable suspicion. However. More so, like the driver in Williams is where we have Mr. Marshall. He is the passenger in a car. He is stopped at this time. However, he also has extensive criminal history that we know involves things such as domestics, car theft, as well as. I believe just general theft. We have his association with the Universal Aryan Brotherhood, which officer Vernon testified is involved in narcotics, firearms and violent crimes. You agree that officer Vernon had no training right in terms of detecting opiate use. Yes, your honor. Right. So when the district court said that he did have that training or he made a finding based on his understanding that he had that training, that that's clearly erroneous. Yes, it would be if the district court hadn't corrected itself in its subsequent order. Obviously, the district court and its order denying is reconsideration expressly stated that officer Vernon relied on his experience encountering heroin and opiates. Another point I would like to address, though, is. The totality of the circumstances here, any officer and officer Vernon shoes would find that it would reasonable to frisk Mr. Marshall upon him getting out of that car or upon having to get him out of the car before the search. Everything available to officer Vernon, including his. Gang affiliation, knowledge of the criminal history and his prior personal experience with both Mr. Marshall and Miss Wilson. Miss Wilson's request and what officer Vernon described as his abnormal or her abnormal nervousness with opening the door multiple times during the stop, which required him to come like, ask her to come back to the car. The totality of the circumstances available to officer Vernon, a reasonable offer would have frisked Mr. Marshall upon getting him out of the car, not only under a totality of the circumstances, but especially for officer safety. Notably, this traffic stop occurred at midnight. There are two suspects in this car and another officer does later arrive to back officer Vernon up. However. Given everything available to him, he wasn't going to allow a potentially armed person and dangerous person out of that car behind him where he could be attacked without being seen. It's just unreasonable to allow any officer to turn their back to a potentially dangerous suspect at any point, especially when they are outnumbered. It is also important to note a defense counsel brought up the body one camera. It's important to note that the frisk had hardly even started before. Officer Vernon saw the pistol in Mr. Marshall's back pocket. Again, it's dark. Officer Vernon had to turn his flashlight on in order to see it. That obviously takes him into custody. However, if there are no further questions from the court. The United States would ask this court to affirm the district court's ruling and see the rest of its time. Thank you. On that last point made by the government, I can't quite tell if they're trying to argue inevitable discovery or not. The record has no indication if I was understanding the government's argument correctly. The record has no indication. The briefs have no indication that officer Vernon somehow saw this gun before he started the frisk. Perhaps I misunderstood the argument. But to the degree that that was an argument of inevitable discovery, I think that argument has been waived at this point. As for the context of Miss Wilson's statement, that context that he determined was that Mr. Marshall may have had, quote, something. And as for her nervousness. There could be another. Her nervousness does not appear particularly abnormal or egregious. Sure, she's talkative when you watch her on the body camera. She does have the door open. But for all we know, this could be a couple of nervous drug users airing out the airing out the passenger door. But the probative value in an R.E.S. armed and dangerous scenario for merely being a drug user is limited. Such as in United States v. Wald, where the odor of burnt methamphetamine still did not give reasonable suspicion that Mr. Wald was armed and dangerous. And so a lot of this boils down to his criminal history and his gang association. And so I will simply end pending any questions on United States v. Hammond. That they wrote that our holding today is not to suggest that Mr. Hammond or any other person suspected or convicted of an armed crime in the past. Stress armed. There may be indiscriminately stopped and frisked on the basis of his criminal history and gang affiliations. Here we don't even have evidence of a history of armed criminal history. We just simply have criminal history. And so that seems to be the bulk of it is his history. And then you've got the drug usage. And then a little bit with the nervousness of the driver. And so each of those separately are weak. Together they're still too weak. So we would ask for the court to reverse. I see I'm out of time. Thank you. All right. I want to thank counsel for their arguments today. They were very helpful. And the case stands submitted and counsel is excused.